J. W. DOLES, Administrator of FRANK BROWN, v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 11 September, 1912.)

1. Carriers of Passengers — Negligence — Boarding Passengers — Starting of Train—Contributory Negligence—Evidence—Questions for Jury.

Upon conflicting evidence, in an action against a railroad company for damages for the negligent killing of plaintiff's intestate, as to whether the defendant's passenger train suddenly moved forward at once after "All aboard!" had been called by the conductor and immediately after the signal for starting had been given, preventing, in the presence of the engineer and porter, the plaintiff's intestate from gaining a foothold on the steps of the car he was endeavoring to enter as a passenger, because of the speed of the train, in consequence of which he was knocked under the cars by a truck left there by an express company, and killed; or as to whether the intestate's death was attributable to his own negligent act in attempting to board the car of a moving train after having been warned not to do so, the ques-

tion of defendant's actionable negligence is one for the deter-
mination of the jury. *Roberts v. R. R.*, 155 N. C., 79, cited as
controlling.

2. Carriers of Passengers — Negligence — Dominant Cause—Joint
   Tort Feasors—Indemnity—Contribution.

   When the negligence of a railroad company causes the pas-
   senger getting aboard of its passenger train to be thrown against
   a truck of an express company left by the latter company near
   the train, and thence beneath the moving train, to his death,
   and the railroad company is sued for damages for the wrongful
   death thus inflicted, assuming that the truck was negligently
   left in a position to contribute to the injury, the negligence of
   the railroad company would be the dominant cause thereof; but
   if otherwise, the two companies would be joint tort feasors, and,
   in this case, there would be no right of indemnity or contribu-
   tion existing in favor of the railroad company against the ex-
   press company, its codelinquent. *Gregg v. Wilmington*, 155 N. C.,
   18, cited and distinguished.

APPEAL by defendant from *Cline, J.*, at March Term, 1912,
of NORTHAMPTON.

The facts are sufficiently stated in the opinion of the Court
by *Mr. Justice Walker.*

*S. T. Stancell, Peebles & Harris, and Gay & Midyette* for
plaintiff.

*Mason & Worrell and Murray Allen* for defendant.

WALKER, J.  It is not necessary to make an extended state-
ment of the facts in this case.  The plaintiff's intestate, Frank
Brown, was killed at Suffolk, Va., while, as alleged, he was
boarding the defendant's passenger train at that place, bound
for Margarettsville in this State.  The plaintiff's testimony
tended to show that the intestate purchased a ticket for his
passage from Suffolk to his destination, and was in the act of
getting upon the passenger coach just after the conductor had
given the call, "All aboard!" when the train was started—"at
once after the signal was given," and the intestate, who was
unable to gain a foothold because of the speed of the train and
the crowded condition of the steps and platform of the car, was
knocked under the cars by a truck of the Southern Express
Company, which had been left on the platform at the station,
within a few feet of the passing train, and killed.

One witness testified that the train started with a jerk and "with full force," while passengers were trying to alight from the train and the intestate was attempting to get on the steps, and that plaintiff could have been seen by the engineer and the porter, who called for passengers to get aboard.

. On the contrary, there was evidence tending to show that the train started at its usual speed, and that intestate was leaving the car and jumped on the truck and was killed. There was also evidence that he was warned not to leave the car by the porter, who told him that he would have the train stopped so that he could get off safely.

It may be said generally that some of the evidence tended to show negligence on the part of the defendant, which approximately caused the intestate's death, while there was other evidence which tended to prove that the intestate's death was caused entirely by his own fault in jumping from a rapidly moving train. The court submitted the case to the jury in a charge which fully explained every phase of the evidence and clearly set forth the law applicable to the facts as they might find them to be.

The charge of the court was in accordance with the principles laid down in *Roberts v. R. R.,* 155 N. C., 79, and the essential facts of the two cases cannot well be distinguished. That case must control our decision in this one on all the points raised. by the defendant, except the contention that the court should not have entered a nonsuit upon the evidence as to the Southern Express Company. The defendant objected to this ruling of the court, and relies upon *Gregg v. Wilmington,* 155 N. C., 18, to sustain his objection. But we do not see the analogy between the two cases. In that case, Wolvin's negligence was active and the efficient cause of the injury, while the negligence of the city of Wilmington was merely passive, in allowing the dangerous condition, brought about by Wolvin's negligence, to exist in one of its streets. The city did not actually coöperate with Wolvin in committing the wrong to the plaintiff's intestate.

In the *Gregg case,* approving what is said by Judge Cooley in his treatise on Torts (3 Ed.), p. 254, we stated the general

rule to be, according to the maxim, that no man can make his
own conduct the ground for an action against another in his
own favor. If he suffers because of his own wrongdoing, the
law will not relieve him. The law cannot recognize equities as
springing from a wrong in favor of one who was concerned in
committing it. 155 N. C., 24. Where two or more persons
have participated in the commission of a wrong, the general
rule undoubtedly is that a right to contribution or indemnity
will not arise in favor of the one held responsible by the injured
party. 38 Cyc., 493. There are exceptions to the rule, but this
case is not included in any of them.

The case of *Churchill v. Holt,* 131 Mass., 67 (41 Am. Rep.,
191), seems to be a strong authority against the contention of
the defendant. It appeared that Churchill left his hatchway in
an unsafe condition. Defendant's servant, in the performance
of his master's business, interfered with it, so that it became
more dangerous, that is, the danger already existing by the
fault of Churchill was increased, and Mrs. Meston fell into the
hatchway and was thereby injured, and recovered damages of
Churchill. It was held that Churchill was not entitled to in-
demnity or contribution from the defendant Holt, whose servant
interfered with the hatchway. With respect to the right of
indemnity, upon the facts presented, the Court said: "In such
a case, both parties, whether they act with a common purpose
or independently, aid in creating the danger or nuisance, and it
is impossible to apportion the degree of their respective negli-
gence, or to determine by whose individual negligence the injury
was caused. They are both wrongdoers, whose unlawful acts
contribute to produce the injury. They are *in pari delicto,* and
therefore neither can recover indemnity or contribution of the
other. The plaintiffs contend that they had the right to go to
the jury upon the question whether the sole cause of the injury
to Mrs. Meston were the negligent acts of the defendants' serv-
ant. We must presume that proper instructions were given
as to other aspects of the case; but in the aspect of the case sup-
posed in the instruction we are considering, that is, if the jury
found that the plaintiffs negligently left the hatchway in a

dangerous condition, and that the acts of the defendants' servant merely made it more dangerous, it is impossible for the jury to find that the fault of the plaintiffs did not contribute to the injury. It is like the case of a man injured by falling into a hole dug partly by one person and partly by another. The acts of both aid in creating the danger which causes the injury, and it cannot be ascertained whether the acts of one excluding the acts of the other would have caused the same injury. If the acts are unlawful, both are wrongdoers, *in pari delicto,* and though each would be liable to the person injured, neither could recover indemnity or contribution of the other." *Churchill v. Holt,* 131 Mass., 77 (41 Am. Rep., 193).

When the same case was before the Court on a former appeal, it was said: "The rule that one of two joint tort feasors cannot maintain an action against the other for indemnity or contribution does not apply to a case where one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability. In such case the parties are not *in pari delicto,* as to each other, though as to third persons either may be held liable." But that is not our case. Here the express company left the truck near the track of the railroad company, and if this was a negligent act, it would not have harmed the intestate if the defendant had not also been negligent. The two acts concurred in producing the injury, and, upon the assumption that the express company was negligent, it and the railroad company were joint tort feasors, as to the plaintiff and as between themselves, and there is no right of indemnity or contribution. It may also be said that the defendant's wrong was the active and dominant cause of the injury, without which it would not have occurred, and it, therefore, has no ground whatever upon which to base a claim for compensation against its codelinquent. *Commissioners v. Indemnity Co.,* 155 N. C., 219.

We find no error in the record.