NEW RIVER CRUSHED STONE, INC. v. AUSTIN POWDER
COMPANY

No. 7424SC830

(Filed 18 December 1974)

Indemnity § 2— indemnity for negligent acts — validity and construction
of agreement

Contract in which the operator of a stone quarry agreed to
indemnify and hold harmless the manufacturer of blasting powder for
any injury or loss resulting from the manufacturer's assistance of
the quarry operator in blasting work was not against public policy
where only the rights of the parties to the contract were involved,
and the contract was intended to cover a claim by the quarry operator
for damages resulting from blasting operations on the operator's
premises whether the damages resulted from the negligence of the
manufacturer's employees or otherwise.

APPEAL by plaintiff from *Fountain, Judge,* 10 June 1974
Session of Superior Court held in WATAUGA County. Heard in
the Court of Appeals on 21 November 1974.

This is a civil action wherein plaintiff, New River Crushed
Stone, Inc., seeks to recover $35,382.49 in damages to its prop-
erty and business allegedly resulting from the negligence of
the defendant, Austin Powder Company, in detonating "blasting
powder" on plaintiff's premises.

In its complaint, plaintiff alleged that it was engaged in
the business of quarrying stone and that it purchased certain
explosive material from the defendant. As an inducement to
the plaintiff to purchase the blasting material, the defendant
"contracted and agreed to be responsible for the detonation of
said blasting powder after it had been properly placed in cor-
rectly drilled holes by the plaintiff." Defendant took over the
duties of detonating the blasting powder and on 28 March 1973
was negligent in detonating it all at one time rather than
through a system of delays. The resulting explosion damaged
the fixtures and equipment of plaintiff.

Defendant filed answer to the complaint and, among other
things, alleged that all work performed by defendant's em-
ployees on plaintiff's premises on 28 March 1973 was pursuant
to the terms of a "Service Agreement" entered into by the
parties on 10 November 1972. Defendant pleaded the "Service
Agreement," the terms of which are set forth below, in bar of
plaintiff's claim.

"Dated 11-10 1972

WHEREAS, the undersigned customer may hereafter, from time to time, request certain assistance of AUSTIN POWDER COMPANY in connection with the performance of certain blasting work; and

WHEREAS, AUSTIN POWDER COMPANY is not engaged in blasting work, its business in explosives being confined solely to the manufacture and sale thereof, but to assist the said customer, the said AUSTIN POWDER COMPANY has agreed, at certain times, to permit said customer the temporary use, free of charge, of the services of said company's employees, together with or without certain needed equipment.

NOW, THEREFORE, the undersigned hereby expressly agrees that, while engaged in said work, said employees and equipment are and shall be, on each occasion, to all intents and purposes, the employees and equipment of the undersigned and subject to his sole supervision and control, and that all work and services so performed shall be at the sole risk and responsibility of the undersigned, and for any damage or loss resulting from such services, except liability for injury or death of said AUSTIN POWDER COMPANY employees, the undersigned expressly agrees to indemnify and hold harmless the AUSTIN POWDER COMPANY and further to assume sole responsibility for the result of the services of such employees or equipment gratuitously furnished by said AUSTIN POWDER COMPANY.

This agreement shall continue in force until either party notifies the other, in writing, of its desire to terminate the same, but such termination shall not relieve either party of any liability arising thereunder prior to such termination.

AUSTIN POWDER COMPANY      NEW RIVER CRUSHED
By: EDD McNEW              STONE, INC. Customer
Dist. No. 41                  BY: HANS MEIXNER"
410

On 16 October 1973, based upon its plea in bar, defendant moved for summary judgment. The pleadings, affidavits, answers to interrogatories, and exhibits filed in support of and in opposition to the motion for summary judgment show that Hans G. Meixner, Secretary-Treasurer of plaintiff, executed the

"Service Agreement" on 10 November 1972 on behalf of the plaintiff and that he was acting within the scope and authority of his employment. The court entered summary judgment for defendant. Plaintiff appealed.

*Finger & Greene by C. Banks Finger for plaintiff appellant.*

*Larry S. Moore and John S. Willardson for defendant appellee.*

HEDRICK, Judge.

A careful review of the record in the instant case reveals that plaintiff and defendant are in agreement as to the execution of the "Service Agreement" by them on 10 November 1972. Therefore, the one question for resolution on this appeal is whether the "Service Agreement" bars plaintiff's claim as a matter of law. G.S. 1A-1, Rule 56(c), Rules of Civil Procedure.

Initially, plaintiff contends that the "Service Agreement" violates public policy. While an indemnity contract which purports to relieve the indemnitee from liability for its own negligence or the negligence of its employees is not favored by the law and will be strictly construed, such an indemnity provision is not against public policy where, as in the case at bar, the contract is private and the interest of the public is not involved and where there is no gross inequality in bargaining power. *Railway Co. v. Werner, Ind.,* 286 N.C. 89, 209 S.E. 2d 734 (1974) ; *Gibbs v. Light Co.,* 265 N.C. 459, 144 S.E. 2d 393 (1965) ; *Hall v. Refining Co.,* 242 N.C. 707, 89 S.E. 2d 396 (1955). No rights of third parties are involved in the instant case, and the plaintiff was under no obligation or compulsion to take advantage of the service which the defendant offered to its customers free of charge. By entering into the "Service Agreement," the plaintiff clearly accepted the conditions defendant annexed to its offer. We, therefore, find this argument to be without merit.

Plaintiff further contends that even if the contract is not against public policy it must be strictly construed, and in the absence of explicit language the court will not relieve the indemnitee from liability for its own negligence or the negligent conduct of its employees. This argument is not convincing. When the express provisions of the "Service Agreement" are read in light of the circumstances surrounding its execution, *Hill v. Freight Carriers Corp.,* 235 N.C. 705, 71 S.E. 2d 133 (1952), we

are of the opinion that the contract was clearly intended to cover a claim by the plaintiff for damages resulting from the use by plaintiff of defendant's employees on plaintiff's premises pursuant to the "Service Agreement," whether the damage resulted from the negligence of defendant's employees or otherwise. Due to the limited nature of the "Service Agreement," we cannot conceive how the parties could have intended otherwise. The language in the "Service Agreement" is clear and unambiguous and will be taken and understood in its plain, ordinary and popular sense. *Railway Co. v. Werner Ind., supra; Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 127 S.E. 2d 539 (1962).

Furthermore, the "Service Agreement" specifically provides that for all intents and purposes the defendant's employees will be considered the employees of the plaintiff while they are assisting the plaintiff and that they will be subject to the plaintiff's control and supervision. There being no rights of third parties involved, the employees of the defendant were therefore the employees of the plaintiff on 28 March 1973 and their acts were the acts of the plaintiff and not the defendant. See *Fralin v. American Cyanamid Company*, 239 F. Supp. 178 (W.D. Va. 1965); *Oregon Portland C. Co. v. E. I. DuPont De Nemours & Co.*, 118 F. Supp. 603 (D. Ore. 1953); *Powder Company v. Campbell*, 156 Md. 346, 144 A. 510 (1929).

For the foregoing reasons, the judgment appealed from is

Affirmed.

Judges BRITT and MARTIN concur.