THE CITY OF WILMINGTON, Plaintiff v. NORTH CAROLINA NATURAL GAS COR-
PORATION, Defendant

No. 935SC1301

(Filed 6 December 1994)

### 1. Indemnity § 9 (NCI4th)— plaintiff not indemnified against own negligence—summary judgment for defendant proper

In an indemnity action where plaintiff city demanded that defendant gas company indemnify and defend plaintiff against all claims arising as a result of a gas fire, the trial court properly granted summary judgment for defendant on its defense that plaintiff's negligence proximately caused the explosion and resulting damage and that defendant never agreed to indemnify plaintiff from plaintiff's own negligence, since courts do not favor indemnity contracts which relieve the indemnitee from liability and will strictly construe indemnity clauses against the parties asserting them; there was no language in this clause explicitly providing that plaintiff would be insulated from its own negligence; and the agreement clearly provided only that defendant would hold plaintiff harmless for all damages resulting from defendant's operation of a gas system.

Am Jur 2d, Indemnity §§ 15 et seq.

### 2. Indemnity § 4 (NCI4th)— construction of natural gas system—applicability of N.C.G.S. § 22B-1—plaintiff not indemnified against own negligence

A franchise agreement between the parties was void under N.C.G.S. § 22B-1 insofar as it might require defendant to indemnify plaintiff from plaintiff's own negligence, and there was no merit to plaintiff's contention that the franchise agreement was not a construction contract and the statute therefore did not apply, since the franchise agreement explicitly provided that the indemnity provision was subject to the limitations of the statute; the franchise agreement included much of the same language which appeared in the statute; and the franchise agreement was a contract for the construction of a natural gas system, the kind of contract the statute contemplated.

Am Jur 2d, Indemnity §§ 15 et seq.

**3. Indemnity § 7 (NCI4th)— voluntary payments by indemnitee—no reimbursement required**

Pursuant to a franchise agreement entered into by the parties, defendant was not required to reimburse plaintiff for amounts voluntarily paid to injured workers above the required workers' compensation payments, since indemnity does not cover payments to a third person for which the indemnitee is not liable and which the indemnitee voluntarily or improperly pays.

**Am Jur 2d, Indemnity §§ 15 et seq.**

Appeal by plaintiff from order granting summary judgment entered 31 October 1993 by Judge James D. Llewellyn in New Hanover County Superior Court. Heard in the Court of Appeals 15 September 1994.

The City of Wilmington (hereinafter plaintiff) and North Carolina Natural Gas Corporation (hereinafter defendant) entered into a franchise agreement in December 1984 whereby defendant could construct, operate and maintain a gas system in Wilmington, North Carolina. Included in the franchise agreement was an indemnity clause which provided as follows:

Section 18. Indemnity and Insurance

(1)The corporation shall release, indemnify, keep and save harmless the City, its agents, officials and employees, from any and all responsibility or liability for any and all damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether agents, officials or employees of the City or third persons, and to all property proximately caused by, incident to, resulting from, arising out of, or occurring in connection with, directly or indirectly, the design, construction, installation, maintenance, or operation of a gas system by the corporation (or by any persons acting for the corporation of for whom the corporation is or is alleged to be in any way responsible), whether such claim may be based in whole or in part upon contract, tort (including alleged active or passive negligence or participation in the wrong), or upon any alleged breach of any duty or obligation on the part of the corporation, its agents, officials and employees or otherwise. The provisions of this section shall include any claims for equitable relief or for damages (compensatory or punitive) against the City, its agents, officials, and employees including alleged injury to the business of any claimant and shall

include any and all losses, damages, injuries, settlements, judgments, decrees, awards, fines, penalties, claims, costs and expenses. Expenses as used herein shall include without limitation the costs incurred by the City, its agents, officials and employees, in connection with investigating any claim or defending any action, and shall also include reasonable attorneys' fees by reason of the assertion of any such claim against the City, its agents, officials or employees. The corporation expressly understands and agrees that any performance bond or insurance protection required by the corporation or the City, shall in no way limit the corporation's responsibility to release, indemnify, keep and save harmless and defend the City as herein provided. The intention of the parties is to apply and construe broadly in favor of the City the foregoing provisions subject to the limitations, if any, set forth in N.C.G.S. 22B-1.

(2) Corporation shall take out and maintain during the life of this agreement Comprehensive General Liability insurance in an amount not less than $1,000,000 for injuries, including accidental death, and/or property damage for any one occurrence. The insurance must be written on an occurrence basis and must provide for protection against liability arising from the operations of the corporation or its contractors under this franchise. Corporation shall also purchase and maintain Contractual Liability insurance for protection against liability assumed under the indemnity provisions of this agreement, in an amount not less than that specified above for Comprehensive General Liability insurance. The corporation shall furnish the schedule of insurance carried under this franchise in the form of a document attested by the insurance carrier or his agent, stating and itemizing the several coverages as provided above. The corporation shall have the appropriate insurance carriers attach a copy of the Contractual Liability endorsements required evidencing the fact that they are providing this coverage. The insurance carrier shall also certify on these documents that it will notify the City by registered mail at least ten (10) days prior to any cancellation or non-renewal of these coverages. The City reserves the right to inspect any policy and to approve its form, including all exclusions and endorsements.

On 5 August 1987, a tragic gas fire occurred in Wilmington in which several employees of plaintiff were injured or killed. Several employees of defendant and one bystander also were injured. Many of the injured people filed lawsuits or workers' compensation claims

against plaintiff. On 9 November 1987, plaintiff demanded that defendant indemnify and defend plaintiff against the claims and against any other claims that might arise as a result of the fire. On 13 November 1987, defendant responded that it was not required to indemnify plaintiff under the franchise agreement. Nevertheless, plaintiff included a third-party indemnity claim against defendant in plaintiff's answer to the claims by the injured workers. Plaintiff eventually moved for summary judgment on all of the claims, but Judge Coy E. Brewer, Jr. denied the motion on 2 August 1991. In November 1991, the claimants signed releases and plaintiff received dismissals with prejudice.

On 19 November 1992 plaintiff filed suit against defendant claiming that defendant's refusal to indemnify plaintiff damaged plaintiff in an amount in excess of one million dollars. On 10 August 1993, defendant moved for summary judgment. Judge James D. Llewellyn entered an order granting the motion on 31 October 1993 as to the third, fourth and fifth defenses of defendant's answer and granted the motion on the eighth defense for those payments made in excess of the workers' compensation payments. Plaintiff appeals.

*Johnson & Lambeth, by Maynard M. Brown, for plaintiff-appellant City of Wilmington.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Jeffrey N. Surles, and Ragsdale, Liggett & Foley, by Peter M. Foley and Stephanie H. Autry, for defendant-appellee North Carolina Natural Gas Corporation.*

EAGLES, Judge.

Plaintiff asserts that the trial court erred by granting defendant's motion for summary judgment based on defendant's third, fourth, fifth, and eighth defenses in its answer. After careful review of the record, we affirm. We will separately address each defense on which the trial court granted summary judgment.

First, we review the standard for granting a summary judgment motion. A court grants a motion for summary judgment when "the evidence before the court demonstrates that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law." *Kirkpatrick & Associates v. Wickes Corp.*, 53 N.C. App. 306, 307, 280 S.E.2d 632, 634 (1981), *citing* G.S. 1A-1, Rule 56(c).

I.

[1] Defendant's third defense in its answer stated that plaintiff's negligence proximately caused the explosion and resulting damage and that defendant never agreed to indemnify plaintiff from plaintiff's own negligence. In contrast, plaintiff claims that defendant signed an indemnity provision that indemnified plaintiff from all liability for any damages that its actions might cause. We do not agree with plaintiff's contention. Courts do not favor indemnity contracts that relieve the indemnitee from liability for its own negligence. *New River Crushed Stone v. Austin Powder Co.*, 24 N.C. App. 285, 287, 210 S.E.2d 285, 287 (1974) (citations omitted). Accordingly, courts strictly construe indemnity clauses against the party asserting it. *Hill v. Carolina Freight Carriers Corp.*, 235 N.C. 705, 710, 71 S.E.2d 133, 137 (1952). Courts will not read into an indemnity agreement provisions "which are neither expressly nor reasonably inferable from the terms." *Kirkpatrick & Associates v. Wickes Corp.*, 53 N.C. App. 306, 308, 280 S.E.2d 632, 634 (1981) (citations omitted).

Here, there is no language in the indemnity agreement that explicitly provides that plaintiff will be insulated from its own negligence. In contrast, the agreement clearly provides only that defendant will hold plaintiff harmless for all damages resulting from **defendant's** operation of a gas system. Plaintiff points to the language at the end of the first paragraph of the indemnity clause to argue that the intention of the parties was for defendant to hold plaintiff harmless for all actions. However, this language, stating that the parties will construe the provision broadly in favor of the plaintiff, is not clear and unequivocal. "Mere general, broad, and seemingly all-inclusive language in the indemnifying agreement has been said not to be sufficient to impose liability for the indemnitee's own negligence." 41 Am. Jur. 2d, Indemnity, §15. Accordingly, the trial court did not err in granting summary judgment for defendant on defendant's third defense.

II.

[2] Defendant's fourth defense provided that the franchise agreement was void under G.S. 22B-1 insofar as it might require defendant to indemnify plaintiff from plaintiff's own negligence. G.S. 22B-1 provides that construction indemnity agreements are invalid insofar as they insulate the promisee from liability for its own negligence. Plaintiff argues that the franchise agreement is not a construction contract and therefore G.S. 22B-1 does not apply to void the indemnity provi-

sion of the franchise agreement. Plaintiff's argument fails for several reasons.

First, the franchise agreement explicitly provides that the indemnity provision is subject to the limitations of G.S. 22B-1. If G.S. 22B-1 did not apply, there would have been no reason for plaintiff, who drafted the agreement, to include it in the franchise agreement. Secondly, G.S. 22B-1 applies to the franchise agreement because the franchise agreement includes much of the same language which appears in G.S. 22B-1. G.S. 22B-1 provides that it applies to any indemnity agreement that relates "to the design, planning, construction, alteration, repair or maintenance of a building, structure, highway, road, appurtenance or appliance, including moving, demolition and excavating connected therewith." The indemnity provision in the franchise agreement provides that defendant will indemnify plaintiff for damages related to "the design, construction, installation, maintenance, or operation of a gas system by [defendant]." Plaintiff cannot persuasively argue that G.S. 22B-1 does not apply to the franchise agreement when the franchise agreement, which plaintiff drafted, describes the scope of defendant's activities by using many of the same terms that G.S. 22B-1 uses.

Finally, plaintiff cannot legitimately assert that G.S. 22B-1 does not apply to the franchise agreement because plaintiff admitted during discovery that "the ordinance granting a natural gas franchise to [defendant] as agreed to between [plaintiff] and [defendant] gives [defendant] the right to construct, repair, and maintain natural gas structures in the public streets, rights-of-way, and other public places." A contract for constructing, repairing, and maintaining structures is exactly what G.S. 22B-1 contemplates. Plaintiff's argument that the statute does not apply to the indemnity provision is without merit. This assignment of error fails.

## III.

In its fifth defense, defendant claimed that plaintiff was not entitled to indemnification because of its own negligence. Plaintiff again contends that the indemnity clause provides that defendant will hold plaintiff harmless for plaintiff's own negligence. As we stated in discussing defendant's fourth defense *supra*, we do not accept plaintiff's interpretation of the indemnity clause. Accordingly, we conclude that the trial court did not err in granting summary judgment for defendant on its fifth defense.

**[3]** In its eighth defense, defendant asserted that because plaintiff **voluntarily** paid the injured workers sums of money above the required workers' compensation payments, defendant was not required to reimburse plaintiff for these voluntary settlement payments. Plaintiff claims that it made these payments pursuant to a City ordinance which provided that plaintiff could provide injured workers with up to twenty-one days of injury leave in addition to the required workers' compensation payments. However, the ordinance does not mandate additional leave, but merely gives plaintiff the discretionary authority to award the additional days of leave.

Indemnity does not cover payments to a third person for which the indemnitee is not liable and which the indemnitee voluntarily or improperly pays. 41 Am. Jur. 2d, Indemnity, § 35. Here, plaintiff was not legally obligated to pay the amount in excess of the required workers' compensation payments; plaintiff's actions were voluntary. Accordingly, we hold that defendant was not required to reimburse plaintiff for these payments. Here too, the trial court did not err in granting summary judgment for defendant.

Affirmed.

Judges ORR and JOHN concur.